## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KAREN LYNN GILLHOOLLEY,

                Plaintiff,

    v.

KILOLO KIJAKAZI,

                Defendant.

CIVIL ACTION NO. 3:22-CV-01581

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Karen Lynn Gillhoolley ("Gillhoolley")'s claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). The parties have consented to proceed before to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be affirmed.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On February 14, 2020, Gillhoolley protectively filed an application for Title II benefits, claiming disability beginning January 1, 2015, due to a myriad of physical health conditions. (Doc. 10-5, at 2). The Social Security Administration initially denied Gillhoolley's application on June 24, 2020, and upon reconsideration on February 24, 2021, prompting Gillhoolley's request for a hearing, which Administrative Law Judge ("ALJ") Richard E. Guida held on

July 8, 2021. (Doc. 10-2, at13). In a written opinion dated July 29, 2021, the ALJ determined that Gillhoolley was not disabled and therefore not entitled to the benefits sought. (Doc. 10-2, at 10). On August 29, 2022, the Appeals Council denied Gillhoolley's request for review. (Doc. 10-2, at 2).

On October 10, 2022, Gillhoolley filed the instant action. (Doc. 1). The Commissioner responded on January 9, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 9; Doc. 10). The parties then filed their respective briefs, with Gillhoolley alleging three errors warranted reversal or remand. (Doc. 14; Doc. 16).

II.   **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A. Administrative Review

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. Judicial Review

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Gillhoolley is disabled, but whether the Commissioner's determination that Gillhoolley is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his decision, the ALJ determined that Gillhoolley "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2015, the alleged onset date, through December 31, 2018, the date last insured." (Doc. 10-2, at 23). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At the onset, the ALJ determined that Gillhoolley last met the insured status requirements of the Social Security Act on December 31, 2018. (Doc. 10-2, at 15).

A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Gillhoolley "did not engage in [SGA] during the period from her alleged onset date of January 1, 2015 through her date last insured of December 31, 2018." (Doc. 10-2, at 15). Thus, the ALJ's analysis proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "degenerative disc disease, fibromyalgia, neuropathy, generalized anxiety disorder, panic disorder, and major depressive disorder." (Doc. 10-2, at 15). The ALJ also noted the non-severe impairment of obesity. (Doc. 10-2, at 15-16).

C.  STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). The ALJ determined that none of Gillhoolley's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 10-2, at 16). Specifically, the ALJ considered Listings 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina); 11.14 (peripheral neuropathy); 12.04 (depressive, bipolar and related disorders); and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 10-2, at 16-17).

D.  RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R.

§ 404.1529(b)–(c).

Here, Gillhoolley alleged that her impairments caused the following symptoms: severe anxiety; depression; agoraphobia, instability with walking; difficulty standing, sitting, or walking; difficulty sleeping; needing help with tying, zippers, buttons, and clasps; and difficulty lifting, squatting, bending, reaching, kneeling, hearing, climbing stairs, remembering things, concentrating, and using her hands. (Doc. 10-2, at 18). The ALJ found that while Gillhoolley's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Gillhoolley's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 10-2, at 18-19). The ALJ then went on to detail - Gillhoolley's medical records and treatment history. (Doc. 10-2, at 19-20). Considering all evidence in the record, the ALJ determined that Gillhoolley had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," subject to the following non-exertional limitations:

> [Gillhoolley] can engage in frequent handling and fingering bilaterally, can engage in work that is limited to simple and routine tasks, involving only simple, work-related decisions, with few, if any, work place changes, no production pace work, and only occasional interacting with supervisors, co-workers, and the public.

(Doc. 10-2, at 18).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Gillhoolley was unable to perform any past relevant work. (Doc. 10-2, at21). The ALJ noted past relevant work as a department store manager, but the exertional requirements of the work exceeded Gillhoolley's RFC. (Doc. 10-2, at 21). Thus, the ALJ proceeded to step five of the sequential analysis.

F.  STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Gillhoolley was 39 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 404.1563. (Doc. 10-2, at 21). The ALJ also noted that Gillhoolley "has at least a high school education" as considered in 20 C.F.R. § 404.1564. (Doc. 10-2, at 22). The ALJ determined that upon consideration of these factors, Gillhoolley's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant could have performed."

(Doc. 10-2, at 22). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Gillhoolley could have performed the requirements of occupations, such as a marker, cleaner housekeeper, and office helper, which are occupations with open positions ranging from 91,000 to 141,000 nationally. (Doc. 10-2, at 22). As a result of this analysis, the ALJ determined that Gillhoolley was not disabled and denied Gillhoolley's applications for benefits. (Doc. 10-2, at 23).

IV.   **DISCUSSION**

Gillhoolley advances one main argument on appeal, alleging that the ALJ's RFC assessment is not supported by substantial evidence. Gillhoolley avers that the limitations set forth in her RFC are insufficient to address Gillhoolley's limitations from those impairments that the ALJ found to be severe and non-severe in his decision. (Doc. 14, at 13-25). Specifically, Gillhoolley asserts that the ALJ failed to account for her use of a rollator, or four point case, and failed to consider how her severe limitations contribute to issues with concentrations, focus, fatigue, and weakness that impact her throughout the day and get work as the day progresses. (Doc. 14, at 19). In addition, Gillhoolley avers that the ALJ erroneously failed to consider her sarcoidosis, lumbar spondylosis, left knee pain and swelling, and bilateral lower extremity pain and weakness, all of which she maintains are confirmed in Gillhoolley's treatment records and in her testimony. (Doc. 14, at 24). Gillhoolley argues that the ALJ failed to consider various medical records that support more significant limitations from her identified severe impairments and that the ALJ failed to explain why he did not adopt the limitations from Gillhoolley's treating sources. (Doc. 14, at 14). Lastly, Gillhoolley's argues that the ALJ committed revisable error by failing to afford proper weight to the opinions of Gillhoolley's treating sources, Susan R. Medalie, D.O. ("Dr. Medalie")

and Robert Knipe, D.O. ("Dr. Knipe"), as compared to the opinions from the State Agency consultants, Varsha Lift, M.D. ("Dr. Lift"), Thomas Fink, Ph.D. ("Dr. Fink"), John Gavazzi, Psy.D. ("Dr. Gavazzi"), and Carl Ritner, D.O. ("Dr. Ritner"). (Doc. 14, at 26-31).

In opposition, the Commissioner argues that substantial evidence supports the ALJ's decision for three primary reasons: (1) the ALJ reasonably considered all relevant evidence and Gillhoolley cites to no authority requiring the ALJ to find severe each of her issues, many of which are irrelevant as they pertain to a period after her date last insured; (2) despite submitting an exhaustive list of severe and/or non-severe impairments, Gillhoolley has not demonstrated how any error on the part of the ALJ caused her harm or that the evidence compels a contrary finding; and (3) even if the record validated some of Gillhoolley's complaints during the relevant period, other evidence cited by the ALJ contradicted the severity and limiting effects of her complaints. (Doc. 16, at 12-20). Thus, the Commissioner asserts that the Court should find that substantial evidence supports the ALJ's assessment because Gillhoolley's appeal is neither supported by the facts or legal authority. (Doc. 16, at 21).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including

medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg.

16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of

evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

The claimant bears the burden of establishing that he "became disabled at some point between the onset date of disability and the date that [his] insured status expired." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *see* 42 U.S.C § 423(a)(1)(A); 20 C.F.R. § 404.131. While evidence generated after a claimant's date last insured can shed light on his condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured. *See Zirnsak*, 777 F.3d at 614 (holding the ALJ did not err in giving little weight to an assessment of claimant's "*current* mental status," conducted over two years after date last insured).

At step two, the ALJ found that Gillhoolley's degenerative disc disease, fibromyalgia, neuropathy, generalized anxiety disorder, panic disorder, and major depressive disorder constituted severe impairments and then considered those impairments in formulating her RFC. (Doc. 10-2, at 15). Upon consideration of the medical evidence in the record and Gillhoolley's activities of daily living, the ALJ determined that Gillhoolley's severe impairments did not significantly limit her ability to perform work activities or suggest a disabling level of impairment. (Doc. 10-2, at 19-20). In making this determination, the ALJ discussed portions of the medical evidence that supported some of Gillhoolley's allegations, such as an MRI showing multilevel degenerative disc disease in 2017; a physical examination

exhibiting tenderness on her paraspinal and lumbar facet joints, and limited range of motion with pain on flexion of the lumbar spine; and reports of nervous and anxious behavior in November 2017 and February 2018. (Doc. 10-2, at 19). However, the ALJ also discussed other evidence that contradicted the severity and limiting effects of her complaints, including negative straight leg raise tests bilaterally, normal neurological findings, intact lower extremity strength, normal musculoskeletal range of motion, and normal mental status findings. (Doc. 10-2, at 19-20). The ALJ also discussed Gillhoolley's activities of daily living, which include caring for a pet, dressing herself and handling other aspects of personal care, preparing her own meals daily for one hour, doing laundry on a weekly basis, going out to familiar places alone, and shopping in stores and online for groceries twice per week. (Doc. 10-2, at 20). The ALJ found that these activities "are not suggestive of more than minimal functional limitations." (Doc. 10-2, at 20).

Next, the ALJ considered the medical opinions of record. The ALJ found the opinion of State Agency consultant, Dr. Lift, who determined on February 22, 2021, that Gillhoolley is capable of light work, to be persuasive because it "is supported by objective findings of negative straight leg raise tests, a normal gait, and intact upper and lower extremity strength, and is consistent with [Gillhoolley]'s indication that she cares for a pet and does chores of laundry and cooking in the home." (Doc. 10-2, at 20). The ALJ explained that "Dr. Lift's opinion of moderate limitations is supported by diagnostic testing including MRIs of the lumbar and cervical spines and electrodiagnostic testing." (Doc. 10-2, at 20). Conversely, the ALJ found the opinions of State Agency consultants, Dr. Fink, Dr. Gavazzi, and Dr. Ritner, who determined that on June 23, 2020, February 22, 2021, and June 23, 2020, respectively, that there is insufficient evidence to evaluate the claim, to be not persuasive. (Doc. 10-2, at

20-21). The ALJ explained that the opinions of Dr. Fink and Dr. Gavazzi are "not supported by several mental status evaluations in the record that assess [Gillhoolley]'s memory, thought content and process, fund of knowledge, and orientation." (Doc. 10-2, at 20). The ALJ explained that the opinion of Dr. Ritner "is not supported by several notes in the record, including neurology notes, physical therapy notes, and primary care noted, that establish and discuss [Gillhoolley]'s symptoms and impairments." (Doc. 10-2, at 21).

In addition, the ALJ found that the opinion of treating source, Dr. Knipe, is not persuasive. (Doc. 10-2, at 21). The ALJ explained that Dr. Knipe's opinion "is not supported by objective findings of intact upper and lower extremity strength, a normal gait free of assistive devices, and a normal musculoskeletal range of motion, and is inconsistent with [Gillhoolley]'s indication that she goes grocery shopping in stores and is able to handle her personal grooming activities." (Doc. 10-2, at 21). Further, the ALJ noted that Dr. Knipe's June 2, 2021, opinion referred several times to a functional capacity evaluation that was performed on May 25, 2021, and that Dr. Knipe did not answer the question asking the date when his opined limitations began. (Doc. 10-2, at 21). Thus, the ALJ found that Dr. Knipe's opinion is not persuasive because, with a date last insured of December 31, 2018, Dr. Knipe's opinion relied, at least in part, on a functional capacity evaluation that was performed more than two years after the date last insured. (Doc. 10-2, at 21). The ALJ also found that the May 25, 2021, functional capacity evaluation is not persuasive because it occurred more than two years after the date last insured. (Doc. 10-2, at 21).Finally, the ALJ found the opinion of treating source, Dr. Medaile, who determined on April 22, 2020, that Gillhoolley is permanently unable to work, "is neither probative nor persuasive, since the issue of whether a claimant is able to work is one reserved for the Commissioner." (Doc. 10-2, at 21).

- 15 -

Here, Gillhoolley has not made any argument nor pointed to any portion of the record to indicate that the ALJ's conclusion with respect to the persistent and limiting effects of her severe and non-severe impairments was in error. In summarizing Gillhoolley's testimony, the ALJ noted that she testified to: experiencing severe anxiety, depression, and agoraphobia; neuropathy in her hands, legs, and feet; difficulty with balance; inability to accomplish simple tasks with her hands; difficulty standing, sitting, and walking due to chronic pain; inability to sleep; chronic fatigue; difficulty with zippers, buttons, and clasps; needing frequent breaks while performing activities; and difficulty lifting, squatting, bending, reaching, kneeling, hearing, climbing stairs, remembering things, concentrating, and using her hands. (Doc. 10-2, at 18). Upon consideration of the record evidence, the ALJ found that while Gillhoolley's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Doc. 10-2, at 18-19).

The Court finds that Gillhoolley's arguments against the ALJ's assessment of her limitations unpersuasive. To being with, "[t]he 'mere existence of a diagnosis' is insufficient to establish disability; rather, 'there must be functional limitations which prevent the performance of any substantial gainful activity.' " *Keck v. Colvin*, No. 3:12-CV-02188, 2014 WL 4793933, at *21 (M.D. Pa. Sept. 24, 2014) (quoting *Talmage v. Astrue*, No. 09-CV-01065, 2010 WL 680461, at *7 (W.D. Pa. Feb. 24, 2010)); *accord, e.g.*, *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004); *Deal v. Astrue*, No. 3:14-CV-01750, 2015 WL 3613318, at *8 (M.D. Pa. June 8, 2015).

- 16 -

While Gillhoolley contends more significant limitations are warranted because the list of limitations and symptoms provided in her brief compound with other issues and would render her incapable of work, Gillhoolley cites to no authority requiring the ALJ to find severe each of her issues. Furthermore, Gillhoolley cites to no evidence of record that pertain to the relevant period in support of her assertions. Contrary to Gillhoolley's suggestions, the Third Circuit has noted that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three." *Hess*, 931 F.3d at 209. "[U]nlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions,' such as by describing the claimant's 'abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'" *Hess*, 931 F.3d at 209 (internal alterations omitted) (quoting SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996)). "In short," the court concluded, "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Hess*, 931 F.3d at 209. Here, although the ALJ did not explicitly state why no additional limitations were necessary for each and every one of Gillhoolley's alleged limitations, the Court finds that the ALJ nonetheless considered all of the relevant evidence in the record and, through the date last insured, accurately noted that the record did not contain medical evidence of acute clinical findings, activities of daily living suggesting of a disabling level of impairment, or medical source assessments that were both persuasive and relevant to the relevant period. (Doc. 10-2, at 19-21). As noted above, the ALJ is not required to undertake an exhaustive discussion of all the evidence or "discuss in h[is] opinion every tidbit of evidence included in the record." *Hur*, 94 F. App'x at 133; *see, e.g., Knepp*, 204 F.3d at 83.

To the extent that Gillhoolley argues that the ALJ failed to comply with SSR 96-8p because he failed to consider Gillhoolley's limitations in the extensive list of issues she suffers from pertaining to severe and non-severe impairments, the ALJ need only include in the RFC those limitations the record supports. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004); *Rutherford*, 399 F.3d at 554. Under SSR 96-8p, an "RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7. "In all cases in which symptoms, such as pain, are alleged, the RFC assessment must: [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; [i]nclude a resolution of any inconsistencies in the evidence as a whole; and [s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-8p, 1996 WL 374184, at *7. "The RFC assessment must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

As noted above, "no incantations are required at steps four and step five simply because a particular finding has been made at steps two and three." *Hess*, 931 F.3d at 209. The ALJ was not required to specifically state whether Gillhoolley needed additional limitations to the extent that her impairments would "compound" with other issues and render Gillhoolley incapable of sustained work activity. All that was required was "a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL

374184, at *7. Here, the ALJ found that Gillhoolley had the RFC to perform a full range of light work and adequately explained the basis for such a conclusion. (Doc. 10-2, at 18-21). The ALJ noted Gillhoolley's testimony that her mental impairments, chronic pain, and neuropathy limited her ability to work and perform activities of daily living, but found that Gillhoolley's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. 10-2, at 19). In making this finding, the ALJ cited to the medical evidence of record during the relevant time period, which consistently showed normal examination findings and no limitations on Gillhoolley's physical ability to work. (Doc. 10-2, at 18-21). Accordingly, the Court finds that the ALJ's explanation of Gillhoolley's RFC was consistent with the requirements of SSR 96-8p.

In her final argument, Gillhoolley argues that the ALJ committed reversible error because he did not afford proper weight to the opinions of treating sources, Dr. Medalie and Dr. Knipe, using the factors under 20 C.F.R. § 1520(c), as compared to the opinions from State Agency consultants. (Doc. 14, at 26-29). The Commissioner argues that Gillhoolley's argument is at odds with the mandate of the new regulatory framework, which specify that the ALJ need only explain that he considered the most important factors of supportability and consistency when discussing the finding about whether an opinion or prior administrative medical finding is persuasive. (Doc. 16, at 22-23); *see* 20 C.F.R. § 404.1520c(b)(2). The Court concludes that the ALJ did not err in considering the fact that all the medical opinions were rendered after Gillhoolley's date last insured; the ALJ's decision to assign little weight to the opinions of Dr. Medalie and Dr. Knipe was supported by substantial evidence, and the ALJ adequately explained his reasons for his decision.

In this case, the ALJ's evaluation comported with the current regulatory scheme, was based on substantial evidence, and is sufficient to permit judicial review. (Doc. 10-2, at 20-21). "Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F.Supp.3d 528, 538 (M.D. Pa. 2019). "[T]he ALJ is responsible for making an RFC determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see Butler v. Colvin*, 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ is expressly not required to "seek outside expert assistance." *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and SSR 96-5p).

First, regarding her argument that the ALJ erred in discounting the opinions of Dr. Medalie and Dr. Knipe that were rendered after her date last insured, the Court finds that this contention does not warrant review. Medical evidence relating to Gillhoolley's condition after the date last insured has been held to be "irrelevant" because a claimant must prove disability in the relevant time period, which means she must show that she was disabled between her alleged onset date and her date last insured. *See, e.g., Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 197 (3d Cir. 2007) (holding that the ALJ need not consider medical evidence "after [the] last insured date"); *Matullo v. Bowen*, 926 F.2d 240, 245-46 (3d Cir. 1990) (stating that evidence

- 20 -

relating to treatment after date last insured is not relevant to the question of whether the claimant has established she was under disability prior to expiration of her date last insured); *Hyler v. Colvin*, No. 12-4974, 2013 WL 3766817, at \*9 (E.D. Pa. July 18, 2013) ("The relevant time period that the ALJ in this case must consider is whether plaintiff was disabled for DIB purposes at any time between plaintiff's alleged onset date . . ., and the date plaintiff was last insured . . . . Evidence related to plaintiff's condition after the date last insured is relevant.").

Next, the Court finds that the ALJ properly concluded that Dr. Medalie's April 22, 2020, "To Whom It May Concern Letter," was neither probative nor persuasive because the issue of whether Gillhoolley is able to work is one reserved for the Commissioner. (Doc. 10-2, at 21); *see* 20 C.F.R. §§ 404.1513(a)(2), 404.1520b(c)(3)(i). Furthermore, contrary to Gillhoolley's assertions, the ALJ appropriately considered the fact that Dr. Knipe's May 25, 2021, opinion was rendered after Gillhoolley's date last insured of December 31, 2018. *See Cardinal v. Colvin*, No. 14-1368, 2016 WL 1237783, at \* 5 (E.D. Pa. Mar. 30, 2016) (concluding that ALJ's decision to afford little weight to medical opinions post-dating plaintiff's date last insured was proper). Gillhoolley cites no legal authority for the contention that the ALJ could not consider this fact when weighing the opinion. As noted in 20 C.F.R. § 404.1527(c)(6), an ALJ may consider "any other relevant factors" when deciding how much weight to afford a medical opinion. The "irrelevancy" of evidence post-dating Gillhoolley's date last insured, would be a "relevant factor[ ]" to consider when weighing the medical opinion. *See Ortega*, 232 F. App'x at 197; *see also* 20 C.F.R. § 404.1527(c)(6).

To the extent Gillhoolley argues that the ALJ did not separately address each limitation set out in the opinions Dr. Knipe, other courts to address this issue have similarly concluded that an ALJ is not required to discuss every limitation, and instead is required to

articulate the persuasiveness of a source's opinions with enough detail and clarity to permit meaningful judicial review. *See Wilder v. Kijakazi*, No. 4:22-CV-83, 2023 WL 2634040, at *8 (M.D. Pa. Mar. 24, 2023) (citing *Campbell v. Saul*, No. 1:20-CV-1715, 2021 WL 37478, at *16 (D.S.C. Jan. 5, 2021) ("it does not appear that 20 C.F.R. § 404.1520c and 416.920c require ALJs to separately consider each limitation in a medical source's opinion"); *B.C. v. Saul*, No. 20-1108-JWB, 2021 WL 411390, at *5 (D. Kan. Feb. 5, 2021)). The Court finds that although the ALJ does not discuss every limitation in the opinion of Dr. Knipe, he did discuss most of them, including the unscheduled breaks and postural limitations at issue in this case. (Doc. 10-2, at 21). The ALJ's discussion is sufficient to permit judicial review and, therefore, remand is not required for additional explanation. Lastly, contrary to Gillhoolley's assertion that the ALJ should have afforded additional weight to the opinions of her treating sources, the applicable regulation, 20 C.F.R. § 404.1520c, provides that the ALJ is not required to articulate how he considered the factors of treatment relationship or specialization unless the ALJ finds that two or more opinions or prior medical findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same. *See Wilder*, 2023 WL 2634040, at *8 (citing 20 C.F.R. § 404.1520c(b)(3)). Gillhoolley fails to direct the Court to any contradictions or omissions in the record pertaining to the relevant disability date, and failed to provide additional evidence or new arguments that would change the outcome of the case. Therefore the ALJ's failure to do so is not a basis for remand.

In sum, the Court finds no abuse of discretion here as, for the reasons given above, the ALJ had substantial evidence to support a disability determination. To the extent that Gillhoolley asks the Court to reweigh the evidence and arrive at a different conclusion, courts "are not permitted to re-weigh the evidence or impose their own those factual determinations"

in reviewing disability appeals. *Chandler*, 667 F.3d at 359. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence and was reached based upon a correct application of the relevant law.

V. CONCLUSION

Based on the foregoing, the Commissioner's decision will be **AFFIRMED**, and judgment will be entered in favor of the Commissioner and against Gillhoolley. Further, the Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.

Dated: October 31, 2023                                    *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **Chief United States Magistrate Judge**